UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

Case No. 21-cr-14-pp

RENE PALMA,

        Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO RECONSIDER (DKT. NO. 26) AND DENYING AS MOOT DEFENDANT'S RENEWED MOTION TO HOLD IN ABEYANCE MOTION FOR RELASE OF FUNDS NECESSARY TO PAY ATTORNEY'S FEES (DKT. NO. 27)**

      On January 12, 2021, the grand jury returned an indictment against the defendant with seven substantive counts and a criminal forfeiture count under 21 U.S.C. §853. Dkt. No. 1. Days later, Magistrate Judge William Duffin issued a warrant to seize the cash being held by the United States Marshal Service as criminally forfeitable under 21 U.S.C. §853(a) and subject to seizure under 21 U.S.C. §853(f). Dkt. No. 10-1. The defendant filed a motion to release the funds necessary to pay his attorney's fees, dkt. no. 5, along with a motion for release of property under 18 U.S.C. §983(a)(3)(B), dkt. no. 6. He argued that the government was required to return the cash because it missed the ninety-day deadline to file a civil forfeiture complaint and/or obtain a criminal seizure warrant after receiving his written claim to the property. Dkt. No. 6. The defendant also asked the court to hold in abeyance his motion for release of

1

funds until the court had ruled on his motion for release of property. Dkt. No. 19. The court agreed to hold the motion for release of funds in abeyance but denied the motion for release of property. Dkt. No. 25.

The defendant has asked the court to reconsider its ruling, dkt. no. 26, and to continue to hold the motion for release of funds in abeyance until it rules on the motion to reconsider, dkt. no. 27. The court will deny the motion to reconsider and deny as moot the motion to hold the motion for release of funds in abeyance.

**I.     Motion for Reconsideration of Order Denying Motion for Release of Property (Dkt. No. 26)**

The Federal Rules of Criminal Procedure do not expressly authorize a motion to reconsider. The United States Supreme Court has held, however, that such motions "are ordinary elements of federal practice that exist in criminal prosecutions despite their omission from the Rules of Criminal Procedure." United States v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010) (citing United States v. Healy, 376 U.S. 75, 77 (1964)). Such motions are "treated just like motions in civil suits." Id.

Different rules and procedures govern motions to reconsider in civil cases. The defendant filed his motion a week after the court issued its ruling. Under the Federal Rules of Civil Procedure, the court would look to Rules 54(b) and 59(e) which allow a court to reconsider a non-final order for the purposes of correcting a manifest error of law or presenting newly discovered evidence. United States v. Lewis, No. 17-cr-191-pp, 2019 WL 3068310, *2 (E.D. Wis. 2019). A manifest error of law involves something more than mere

2

disappointment by the losing party but rather a "wholesale disregard, misapplication or failure to recognize controlling precedent." Id. (quoting Bilek v. American Home Mortg. Servicing, No. 07 c 4147, 2010 WL 3306912, at *1 (N.D. Ill. Aug. 19, 2010)). Newly discovered evidence is evidence that was not available at the time of briefing. Id. (quoting Katz-Crank v. Hasket, No. 13-cv-00159, 2014 WL 3507298, at *2 (S.D. Ind. July 14, 2014). A party may not use a motion to reconsider as an opportunity to make new arguments. In re Prince, 85 F.3d 314, 324 (7th Cir. 1996)). In other words, a motion to reconsider does not allow a party to introduce new evidence or make arguments that could—and should—have been presented to the court when it initially was deciding the motion. United States v. Resnick, 594 F.3d 562, 568 (7th Cir. 2010).

  A. Court's Order Denying Motion For Release of Property Under 18 U.S.C. §983(A)(3)(B) (Dkt. No. 25)

The defendant asks the court to reconsider its May 27, 2021, order denying his motion for release of property under 18 U.S.C. §983(A)(3)(B). Dkt. No. 25.

In denying the motion, the court analyzed the two relevant forfeiture statutes. Id. at 5. The court began with the civil statute because the government had seized the property, sent a notice of the seizure to the defendant and filed a civil forfeiture complaint before indicting the defendant. Id. at 2. The civil statute, the Civil Asset Forfeiture Reform Act (CAFRA), provides that if an interested party files a written claim in response to the government's notice of forfeiture, the government must file a civil forfeiture complaint no later than ninety days after the interested party files the claim *or*

3

"(I) obtain a criminal indictment containing an allegation that the property is subject to forfeiture; and (II) take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute." 18 U.S.C. §983(a)(3)(A), (B). The court explained that, when the government fails to take either of these steps (as it did in this case), CAFRA requires that the government "promptly release the property pursuant to regulations promulgated by the Attorney General," and precludes the government from taking "any further action to effect the civil forfeiture of such property in connection with the underlying offense." 18 U.S.C. §983(a)(3)(B).

The court agreed with the defendant that 18 U.S.C. §983(a)(3)(B) required a prompt release of the property but noted that the statute required the release to take place pursuant to regulations promulgated by the Attorney General. Dkt. No. 25 at 7. The court observed that the relevant regulation stated "under this subsection, the United States is not required to return property for which it has an independent basis for continued custody, including but not limited to contraband or evidence of a violation of law." 28 C.F.R. §8.13(a).

In briefing the original motion, neither party cited a case with facts similar to those present in this case, where the government filed an untimely civil forfeiture complaint, dismissed the civil forfeiture case but then obtained an indictment that included a criminal forfeiture provision and obtained a criminal warrant. In its decision denying the motion, the court discussed—and distinguished—the cases relied on by the parties: United States v. Martin, 460 F. Supp. 2d 669 (D. Md. 2006) and United States v. Goodchild, 347 F. Supp.

4

3d 258, 262 (E.D. Penn. 2018). In Martin, the defendant did not timely file a written claim and the government did not file a civil forfeiture complaint; the court found that the CAFRA does not preclude the government from subsequently seeking to criminally forfeit property. Martin, 460 F. Supp. 2d at 675-76. On the other hand, in Goodchild the government held onto the property under the civil seizure warrant rather than under a criminal warrant, so the district court held that the civil seizure warrant remained controlled by CAFRA. Goodchild, 347 F. Supp. 3d at 263. Notably, the district court in Goodchild never addressed CAFRA's requirement that the government "shall promptly release the property pursuant to the regulations promulgated by the Attorney General." Dkt. No. 25 at 16.

In its decision denying the motion, the court reviewed the cited regulation, which clarifies that the "United States is not required to return property for which it has an independent basis for continued custody, including but not limited to contraband or evidence of a violation of law." Id. (citing 28 C.F.R. §8.13). Applying that language, the court found that the government had an independent basis for continued custody of the property. Id. For the three years prior to the arrest, the defendant reported taxable income of $8,726. Id. (citing 10-1 at 13). The items seized (over $520,000 in cash, valuable jewelry and gold) constituted "evidence that the defendant (who worked in a tattoo shop and reported less than $10,000 in taxable income every year) was violating the law." Id. Even though the government had not followed the civil forfeiture procedures under CAFRA and could no longer

5

pursue its civil forfeiture case, the court concluded the government could proceed with a criminal forfeiture. Id. at 18. The court denied the defendant's motion for release of property. Id.

> B. Defendant's Motion to Reconsider Order Denying Motion for Release of Property Under 18 U.S.C. §983(a)(3)(B) (Dkt. No. 26)

The defendant now asks the court to reconsider, arguing that it committed factual and legal error. The defendant argues that factually, the government has no basis for continuing to hold the property as "evidence" because the government converted the money into cashier's checks five days after it was taken from the defendant. Dkt. No. 26 at 1. He argues that legally, the court's decision allows a regulation to override the "statute's clear intent and choice of remedy." Id. The defendant fears that the court's reasoning creates a "regulation-centered rule that swallows whole the statutory remedy enacted by Congress." Id. at 2. The defendant sees a future where the government never will be required to comply with CAFRA's deadlines and always will claim that large amounts of money constitute evidence. Id. at 2, 3.

Citing CAFRA's purpose of affording more due process to individuals affected by property seizures, see In re $85,08.63 from PNC Bank Account, No. 17-136, 2018 WL 3427635, *2 (E.D. Penn. 2018), the defendant says that the statute's reference to the Attorney General's regulations should not be allowed to "undermine its clear intent and remedy." Dkt. No. 26 at 4. He asserts that the government didn't need to hold the money as evidence because it photographed the bills, made reports about the seizure and could produce testimony by the seizing agents at trial. Id. at 5. The defendant argues that the

6

government has no independent basis to continue to hold the property and argues that the court must reconsider and order the property returned to him. Id. at 5-6.

    C.    <u>Government's Response (Dkt. No. 34)</u>

The government admits that it initially seized the money as evidence but asserts that it now holds the property under a valid criminal seizure warrant. Dkt. No. 34. It asserts that the warrant provides an "independent basis" to keep the property under the Attorney General's regulation, 28 C.F.R. §8.13. Id. For the government, the argument is simple: failure to comply with the civil forfeiture statute means that the government cannot proceed with a *civil* forfeiture case. Id. at 2. The statute states that if the government fails to commence the civil or criminal forfeiture action within the ninety days, the government "shall promptly release the property pursuant to the regulations promulgated by the Attorney General, and may not take any further action *to effect the civil forfeiture of such property in connection with the underlying offense.*" 18 U.S.C. §983(a)(3) (emphasis added). Pointing to this language, the government argues that while its failure to timely file the civil forfeiture complaint means that it could not take further action in the *civil* forfeiture case, it can—and did—obtain a criminal seizure warrant. Dkt. No. 34 at 4. It argues that at that point, the criminal forfeiture rules went into effect. <u>See</u> 18 U.S.C. §983(a)(3)(B).

The government argues that its interpretation is consistent with 28 C.F.R. §8.13, the regulation that effectuates 18 U.S.C. §983(a)(3). Id. at 5. It

7

cites a recent case out of the Northern District of Texas where the district court allowed the government to hold the property as evidence and contraband under a valid criminal warrant even though the government had missed the deadline to civilly forfeit the property, Approximately Two Hundred Twenty-Two 222 Firearms & Firearm Accessories, 2021 U.S. Dist. LEXIS 87519, *4 (N.D. Tex. May 6, 2021). Id.

The government also attacks the defendant's claim that none of the conditions of 28 C.F.R. §8.13 had been met. Id. at 8. The regulation states that "the United States is not required to return property for which it has an independent basis for continued custody, including but not limited to contraband or evidence of a violation of law." 28 C.F.R. 8.13. The government says the question is not whether the seized property has evidentiary value but whether the government established a sufficient nexus between the currency and narcotics activity. Dkt. No. 34 at 9. The government argues that such a nexus exists here because the defendant was involved in a cash-based business selling narcotics, stored the drugs near his money and had less than $10,000 legitimate income in the three years prior to his arrest; it also argues that a canine officer alerted to the presence of narcotics on the money when it was seized. Id. at 11.

    D.    <u>Defendant's Reply (Dkt. No. 38)</u>

In his reply brief, the defendant argues that the money is neither evidence nor contraband—two enumerated examples of an independent basis for continued custody of property under 28 C.F.R. §8.13. Dkt. No. 38 at 1. The

8

defendant says the court must decide which statute applies: CAFRA, with its requirement that the government release the property, or 21 U.S.C. §853(f), which allows the government to seize and hold the property under a criminal forfeiture warrant. Id. at 2.

The defendant reasons that CAFRA must apply because it clearly states that the applicable criminal forfeiture statute governs only if the "criminal forfeiture is the only forfeiture proceeding commenced." Id. at 1-2 (citing 18 U.S.C. §983(a)(3)(C)). The defendant interprets this language to mean that "when any other forfeiture proceeding has been **'commenced,'** any later criminal proceeding is not the 'only' one commenced so CAFRA governs and not 'the applicable criminal forfeiture statute.'" Id. at 2. He says that Congress could have used the words "pending" or "ongoing" instead of commenced, and asserts that because it did not, "§ 983(a)(3)(C) only allows criminal forfeiture statutes to govern continued possession of property when the government *never* files a civil forfeiture complaint." Id. at 2-3 (citing Goodchild, 347 F. Supp. 3d at 265).

The defendant also invokes several canons of construction. First, the defendant argues that the court must follow CAFRA as the more recent statute and assume it was passed to supplant the criminal forfeiture statute. Id. at 4. He argues that Congress enacted CAFRA almost sixteen years after the criminal forfeiture statute and that it is an "established rule of statutory construction" that a "later adopted provision takes precedence over an earlier, conflicting provision of equal stature." Id. (quoting Tenn. Wine and Spirits

9

Retailers Assoc. v. Thomas, 139 S. Ct. 2449, 2462 (2019)). Second, he argues that statutory construction dictates that a specific statutory provision "controls over one of more general application." Id. (citing Gozlon-Peretz v. United States, 498 U.S. 395, 407 (1991)). The defendant reasons that the specific provisions of §§983(a)(3)(B) and (C) specifically describe what happens when the government misses its deadline to file a civil forfeiture case, while §853(f) more generally governs how the government may request, and the court grant, criminal seizure warrants. Id. at 4-5.

Next, the defendant argues that the affidavit filed in support of the criminal warrant was insufficient. Id. at 5. He asserts that the only reference in the affidavit to a protective order was the conclusory statement that such an order would not be sufficient to assure the availability of the property in the future, and that this statement did not provide the issuing magistrate judge with "any basis whatsoever to determine whether a restraining order, injunction, performance bond or 'any other action' could be sufficient to 'preserve the availability of [the] property' for forfeiture." Id. The defendant argues that the warrant "fails and cannot stand in the way of this Court enforcing § 983(a)(3)(B)'s plain and controlling remedy to release the property promptly." Id. at 6.

Finally, the defendant points to the fact that civil forfeitures are *in rem* but criminal forfeitures are considered *in personam* and therefore punitive against the defendant. Id. at 6. He asserts that any ambiguity must be

10

Case 2:21-cr-00014-PP-WED    Filed 07/21/21   Page 10 of 17   Document 39

"interpreted in favor of the defendants subjected to them." United States v. Santos, 553 U.S. 507, 514 (2008). In other words, the tie goes to the defendant.

E.     Analysis

Generally, a motion to reconsider is not the time to raise arguments that could have been raised before. In his initial motion for release of property and his reply, the defendant argued that the court could resolve the motion by reading the "plain language" of the statute. Dkt. Nos. 6 at 1; 18 at 1. The defendant focused on 18 U.S.C. §983(a)(3)(B) and argued that the government must "promptly release the property" when it fails to timely file a civil forfeiture complaint and then pursues criminal forfeiture. Dkt. No. 6 at 1. The defendant now argues that the rules of statutory construction support his argument because CAFRA is the more recent statute, is more specific and is less punitive the general criminal forfeiture provisions. Dkt. No. 26 at 4-5.

The defendant has not met his burden of establishing a manifest error of law and he has not provided the court with newly discovered evidence. A manifest error of law requires something more than the defendant's disagreement with the court's ruling. The defendant has not cited binding precedent that governs this fact pattern (and the court was able to find none). Neither the United States Supreme Court nor the Seventh Circuit Court of Appeals has squarely addressed these facts. The court considered—and distinguished—the district court cases from other circuits that the parties cited. The court also laid out its reading of the two statutes.

The defendant's reply brief glosses over the fact that the starting point of any analysis must be the language of the statute itself. United States v. Sanders, 909 F.3d 895, 901 (7th Cir. 2018) (statutory interpretation must always begin with the plain language of the statute). "In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988). The court must "give effect to every clause and word of the statute." Duncan v. Walker, 533 U.S. 167, 174 (2001)).

If the question is what happens when the government civilly seizes property, then fails to timely file a civil forfeiture complaint or obtain a criminal indictment and "take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable statute," the plain language of the statute answers that question. The government must "promptly release the property pursuant to the regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." 18 U.S.C. §983(a)(3)(B)(ii). The Attorney General's regulation, titled "Return of property pursuant to 18 U.S.C. §983(a)(3)(B)," states:

> (a) If, under 18 U.S.C. 983(a)(3), the United States is required to return seized property, the U.S. Attorney in charge of the matter shall immediately notify the appropriate seizing agency that the 90-day deadline was not met. Under this subsection, the United States is not required to return property for which it has an independent basis for continued custody, including but not limited to contraband or evidence of a violation of law.

12

28 C.F.R. §8.13. This court held that the government had an independent basis for continued custody.

In his original motion, the defendant did not discuss the requirement that the release must be pursuant to the regulations promulgated by the Attorney General. In his motion for reconsideration, the defendant acknowledges the language but focuses on the last clause of 28 C.F.R. §8.13 ("including but not limited to contraband or evidence of a violation of law") and says that the government lacked an independent basis to hold the property because the seized property was neither evidence nor contraband. That argument ignores the phrase "including but not limited to." As the court previously ruled,

> In a situation like this one, . . . where the government used the civil forfeiture to seize property from someone whom it had probable cause to believe had committed a crime so that it could maintain the property until it prepared and presented to the grand jury an indictment, the government had an independent basis for continued custody of the property.

Dkt. No. 25 at 17.

The defendant also drops a footnote in his reply brief explaining that his motion to reconsider "raises issues of statutory construction only" and asks the court to ignore the government's citations to cases about how money linked to drugs can be considered in the probable cause context. Dkt. No. 38 at 5, n.4. The defendant explains that "[e]ither § 983(a)(3)(B) requires the release of the money or § 853(f) allows the government to continue to hold it; whether 'evidence of the currency's connection to drug trafficking is overwhelming' in this case does not matter." Id. The court disagrees. Whether the property is

13

subject to criminal seizure and whether it is subject to criminal indictment *is* relevant to the question of whether the government had an independent basis for continuing to hold the property.

As the district court of Maryland explained in Martin, if the government misses the CAFRA deadline, CAFRA cannot serve as the authority for the government to hold the property, but it "does not stand in the way when a different statutory scheme provides an independent basis for holding the property after the CAFRA time limits have elapsed." Martin, 260 F. Supp. 2d at 675. The interpretation proposed by the defendant in Martin, and by the defendant here, would leave the government "worse off having initiated civil forfeiture proceedings than if it had simply done nothing." Id. at 676. As the Martin court noted, if the government had simply indicted the property (without first seizing it civilly), then obtained a criminal seizure warrant, the criminal seizure warrant would be valid. Id. As the Martin court observed, "One purpose of CAFRA was to encourage expeditious judicial resolution of forfeiture disputes; as a matter of policy, it is unlikely that Congress intended to discourage the use of the civil forfeiture system by imposing its new deadlines on all proceedings where the civil forfeiture system has ever been invoked." Id.

The Martin court also addressed the fact that there was a period between the time when Martin filed his claim to the seized property and the issuance of the criminal warrant during which CAFRA required the property's return. Id. The Martin court reasoned that

> [t]his anomaly is largely theoretical, however. The criminal forfeiture statutes do not include a time limit; even if this Court required that

14

the property be released today, the Government could turn right around, get a new criminal forfeiture warrant, and proceed with criminal forfeiture under the Fourth (or Fifth) Superseding Indictment. . . . . Thus, whatever the status of Martin's property when she filed the instant motion for its return, the Government's continued detention of the property became legal when it realized (thanks, probably, to Martin's motion) that it needed to take further action and obtained the criminal warrants. The legality of the detention prior to that point is, as the Government argues, moot.

These results make sense in light of the purposes of CAFRA. CAFRA was intended to provide additional protections to persons whose property was subject to civil forfeiture; Congress was concerned because "[c]ivil forfeiture provides far fewer protections to property owners than criminal forfeiture, which requires a criminal conviction of the property owner." SENATE JUD. COMM., STAFF REPORT ON S. 1931, *supra.* Where, as here, the Government elects to proceed with criminal forfeiture instead of civil forfeiture, § 983(a)(3)(C) tells us that CAFRA's protections are unnecessary and do not apply.

Id.

The court agrees that once the government missed the ninety-day deadline, it was required to promptly return the property under the Attorney General's regulation and was barred from pursuing civil forfeiture. But the court found in the first instance, and still finds, that the government had an independent basis for continuing to hold the property. And now, the government is in lawful possession of the property, having both indicted it and seized it under a criminal seizure warrant. Under 21 U.S.C. §853(f), the government requested the issuance of a warrant and the court determined there was probable cause to believe that in the event of a conviction, the property would be subject to forfeiture and that a protective order would not be sufficient to assure the availability of the property for forfeiture. 21 U.S.C. §853(f). The defendant did not challenge the probable cause determination in

15

his motion for release of property; it was only in his request for reconsideration that he argued that the affidavit in support of the warrant was insufficient. He has waived that argument.

The government has an independent basis for its current custody of the property. Because the defendant has not persuaded the court that it erred, the court will deny the defendant's motion to reconsider.

## II. Defendant's Renewed Motion to Hold in Abeyance Motion for Release of Funds Necessary to Pay Attorney's Fees (Dkt. No. 27)

With the motion to reconsider, the defendant filed a renewed motion to hold in abeyance motion for release of funds necessary to pay attorney's fees. Dkt. No. 27. The defendant argues that the same reasons apply as when the court first held the motion in abeyance—judicial economy and the motion for release of funds may be moot if the motion to reconsider is granted. Because the court is denying the motion for reconsideration, there is no need to continue to hold in abeyance the defendant's motion for release of funds necessary to pay attorney's fees.

## III. Conclusion

The court **DENIES** the defendant's motion to reconsider. Dkt. No. 26.

The court **DENIES AS MOOT** the defendant's renewed motion to hold in abeyance motion for release of funds necessary to pay attorney's fees. Dkt. No. 27. The court **ORDERS** that the defendant must file his reply brief in support

of his motion for release of funds necessary to pay attorney's fees by the end of the day on **August 13, 2021**.

Dated in Milwaukee, Wisconsin this 21st day of July, 2021.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**